

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 20 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**CHRISTOPHER BOOSE**                                              **PLAINTIFF**

**V.**                          CIVIL ACTION NO.: 3:25-cv-447-TSL-MTP

**VITALCORE HEALTH STRATEGIES, LLC; AND**
**JOHN DOE DEFENDANTS 1-25**                           **DEFENDANTS**

---

### COMPLAINT
### (PLAINTIFF REQUESTS A TRIAL BY JURY)

---

**COMES NOW** the plaintiff, Christopher Boose (sometimes herein referenced as "Plaintiff") by and through undersigned counsel and pursuant to the laws of the State of Mississippi and the Federal Rules of Civil Procedure, and files this, Complaint against Defendants, Vitalcore Health Strategies, LLC; and John Does 1-25 (including but not limited to any and all current / former employees of the aforementioned agencies in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) (hereinafter collectively referred to as "Defendants"). In support thereof, Plaintiff would show unto this Honorable Court the following:

### I.

### PARTIES

1.      Plaintiff, CHRISTOPHER BOOSE, is an adult resident citizen of Hickory, Newton County, Mississippi who resides at 16528 Hwy 80; Hickory, Mississippi 39332. He may be served with process of this Court by and through his attorney, whose name and address are provided below.

1

2.      Defendant, VitalCore Health Strategies, LLC (sometimes hereinafter referred to as "Vitalcore") is a Kansas company, incorporated and organized under the laws of the State of Mississippi, whose principal place of operation is located at 719 SW Van Buren St., Suite 100, Topeka Kansas 66603. Defendant, VitalCore Health Strategies, LLC, may be served with process through its registered agent: Corporation Service Company; 109 Executive Drive, Suite 3; Madison, Mississippi 39110, or by personally delivering it to any other agent authorized by appointment or by law to receive service of process, pursuant to FRCP 4.

3.      Defendants, John Does 1-25 (including but not limited to any and all current / former employees of the aforementioned agencies in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) are other individuals, persons, businesses, institutions, corporate persons or entities whose identities are unknown to the Plaintiffs at the filing of this complaint, but who may be liable for all or part of the acts or omissions committed resulting in the subject incident herein and against whom Plaintiffs may seek recovery of damages.

## II.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of costs and interest.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391 inasmuch as a substantial part of the counts giving rise to this claim occurred in Mississippi.

## III.

## <u>NOTICE OF CLAIMS</u>

6.    In correspondence dated January 13, 2025, Plaintiff, by and through counsel caused to be filed and delivered via hand delivery to VitalCore Health Strategies, LLC at 109 Executive Drive, Suite 3, Madison, Mississippi 39205, a notice of claim letter regarding the act(s) and/or omission(s) set forth herein. 42 U.S.C. § 1983, 42 U.S.C. § 1985, Miss. Code Ann. § 11-46-11 and any and all other applicable state or federal statute(s) or constitutional provision(s), and/or any applicable state or federal common law cause(s) of action. A copy of the Notice of Claims letter is attached hereto and incorporated by reference as "Exhibit A."

## IV.

## <u>FACTS</u>

7.    On or about February 28, 2023, Plaintiff, Christopher Boose, a nonviolent offender, was remanded to the custody of the Mississippi Department of Corrections ("MDOC") by the Newton County, Mississippi Circuit Court for allegedly violating certain terms of Plaintiff's participation in the Drug Court Program. Plaintiff was ordered to complete alcohol and drug treatment before he would be released from MDOC custody.

8.    After a brief stint at East Mississippi Correctional Facility, on or about July 13, 2023, Plaintiff was transferred to the Central Mississippi Correctional Facility (sometimes hereinafter referred to as "CMCF") located at 3794 Highway 468, Pearl, Mississippi 39208. At all relevant times herein, Plaintiff was being held as an inmate in the custody of MDOC and CMCF.  At all relevant times, Plaintiff was lawfully on the

premises as an inmate of CMCF and was in compliance with the laws of the State of Mississippi. Moreover, at all relevant times, Vitalcore was providing the overwhelming majority of medical care to inmates in the custody of MDOC and CMCF.

9.      At all relevant times herein, Plaintiff was stripped of virtually every means of self-protection and self-preservation and was foreclosed access to outside medical aid due to his incarceration.

10.    On or about December 15, 2023, Plaintiff broke his right arm.

11.    Plaintiff reported this incident to Defendants. In spite of reporting this severe and significant pain that Plaintiff was experiencing, Defendants, by and through its agent(s) and/or employee(s), refused to treat Plaintiff, ignored Plaintiff's complaints and intentionally treated him incorrectly and/or misdiagnosed him. These act(s) and/or omission(s) by Defendants indicated a clear disregard for Plaintiff's serious medical emergency.

12.    Almost a week later, on or about December 21, 2023, Plaintiff's condition deteriorated to the point where Plaintiff was in and out of consciousness. Plaintiff was finally transported to an off-site hospital to receive medical attention for his broken arm.

13.    Once Plaintiff arrived to the hospital, upon information and belief, a severe infection developed in Plaintiff's body as a result of his untreated broken arm.

14.    As a result of the massive tissue and muscle damage from the bacterial infection in Plaintiff's body, Plaintiff's entire arm had to be amputated to the shoulder. Moreover, as a result of the infections that had developed in Plaintiff's body, he was hospitalized for several days as he fought for his life.

4

15.     Shortly after this disturbing incident, Plaintiff, a nonviolent offender, was released from MDOC custody on or about January 12, 2024. A true and accurate copy of a picture of the condition of Plaintiff's arm shortly after his arrival to UMMC is attached hereto and fully incorporated as "Exhibit B".

16.     As a result of his injuries, Plaintiff's arm was amputated and he sustained and other severe injuries to his body. Plaintiff continues to experience significant swelling, inflammation and pain. Additionally, the psychological impact is untold.

17.     Upon information and belief, MDOC is primarily concerned and involved with the confinement of inmates throughout the State of Mississippi. MDOC has a duty to "accept adult offenders committed to it by the courts of this state for incarceration, care, custody, treatment and rehabilitation(.)" Miss. Code Ann. 47-5-10(1)(a). MDOC also has a duty to "provide for the care, custody, study, training, supervision and treatment of adult offenders committed to the department(.)" Miss. Code Ann. 47-5-10(1)(b). MDOC provides this care to inmates committed to the department by and through Vitalcore.

18.     MDOC Commissioner Burl Cain has previously acknowledged that MDOC is 'not where it need[s] to be' in terms of running a safe prison system.

19.     Defendants have failed to adopt a strategy to protect the safety, health and lives of inmates in MDOC custody. The failure of Defendants' officials to adopt sufficient, large-scale reform to match the medical needs of the inmates in MDOC custody evidences Defendants' deliberate indifference.

20.     Defendant, Vitalcore is in charge and provides the overwhelming majority of medical and health care to inmates housed at MDOC and CMCF. To that end,

Defendants' general duties of care include maintaining a safe, secure, and humane environment for the custody of confined individuals in accordance with both federal, state and local statutes.

21.    Defendants, (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) collectively had affirmative duties to protect and safeguard Plaintiff's constitutional right to be free from cruel and unusual punishment and the right to adequate medical care.

22.    The act(s) and/or omission(s) of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) caused and/or contributed to the injuries sustained by Plaintiff.

23.    Defendants collectively (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) breached the standard of care owed to Plaintiff.

24.    The injuries and damages sustained by Plaintiff, occurred in whole or in part as the result of Defendants refusing to treat Plaintiff, ignoring his complaints, and intentionally treating him incorrectly, which evidenced a wanton disregard for Plaintiff's health and safety.

25.    The employees and agents of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) had affirmative duties to protect

and safeguard Plaintiff's right to be free from cruel and unusual punishment and the right to medical care.

26.     At all relevant times, Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) were in charge of the daily operations of CMCF. It was Defendants' duty to provide adequate medical care to Plaintiff, to make the facility reasonably safe, and/or to inspect inmates who were potentially involved in dangerous conditions in the facility. Defendants failed to do what a reasonable, prudent entity would have done in the same or similar circumstances. The actions and/or inactions of Defendants proximately caused Plaintiff's injuries and damages.

27.     At all relevant times, Doe Defendants 1-25 were the individuals, companies or entities whose responsibility it was to insure that order was maintained, the inmates were being provided with adequate and timely medical attention and that no conditions existed that could possible create a serious risk of bodily harm or death. Doe Defendants 1-25 failed to do what reasonable, prudent individuals, companies or entities would have done in the same or similar circumstances.  Upon information and belief Doe Defendants 1-25 were in the course and scope of employment with and acted in furtherance of the interests of Defendants and was an apparent agent acting within his/her actual or apparent authority of Defendants and John Does 1-25 (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.), therefore, these Defendants are liable for the negligence of its employee(s)/statutory

7

employee(s)/agent(s) in failing to keep provide adequate and proper medical attention to Plaintiff after he broke his arm. The actions and/or inactions of Defendants proximately caused Plaintiff's injuries and damages.

28.    As a result of the incident in question, Plaintiff sustained economic damages, including but not limited to medical bills, prescription drug costs, travel costs to hospitals, doctors and others. Plaintiff also sustained physical injuries; physical, conscience pain and suffering associated with these injuries; individual loss of wages and/or wage earning capacity; loss of enjoyment of life; hedonic damages; and others.

29.    Plaintiff has suffered and will continue to suffer great physical pain, severe emotional distress, psychological distress, mental anguish, loss of enjoyment of life and other damages more specifically set for below as a result of this incident.

30.    As a result of Defendants' act(s) and/or omission(s), Plaintiff has sustained, and will likely continue to sustain economic as well as non-economic damages.

## V.

## VIOLATIONS OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983
### (GENERAL ALLEGATIONS)

31.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

32.    In committing the acts complained of herein, Defendants acted under the color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth, Eighth and Fourteenth Amendments to the United States

8

Constitution including, but not limited to a constitutional right to be protected and free from cruel and unusual punishment.

33.    In violating Plaintiff's rights as set forth above and other rights that will be proven at trial, Defendants acted under color of state law to set into motion a chain of events that led to Plaintiff losing his right arm and sustaining other general and special damages as alleged herein. The acts and/or omissions of Defendants violated Plaintiff's rights under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

34.    As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C §1983.

35.    The conduct of Defendants was deliberate, willful, malicious, oppressive, reckless, and/or deliberately indifferent and was of such a nature that punitive damages and attorneys' fees should be imposed in an amount commensurate with the wrongful acts alleged herein.

36.    The act(s) and/or omission(s) of Defendants give rise to the claims asserted herein by Plaintiff.

**VI.**

**<u>VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983</u>**
**(EIGHTH AMENDMENT VIOLATION TO BE FREE**
**FROM CRUEL AND UNUSUAL PUNSHIMENT)**

37.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

9

38.    Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) violated Plaintiff's clearly established constitutional right to be free from cruel and unusual punishment. Defendants displayed a subjective deliberate indifference to Plaintiff's constitutional rights which derived from a policy or custom adopted that is/was maintained with an objectively deliberate indifference. In spite of Plaintiff's clear medical emergency, Defendants essentially looked the other way and were deliberately indifferent to Plaintiff's need for adequate medical attention.

39.    Defendants as a whole shared a duty to ensure that Plaintiff received adequate medical care while in MDOC custody. Defendants' act(s) and/or omission(s) breached this duty and exhibited conduct that demonstrated a deliberate indifference to Plaintiff's serious medical needs. Said act(s) and/or omission(s) constituted an unnecessary and wanton infliction of pain.

40.    Plaintiff was also confined in conditions which allowed his medical needs to be ignored. Defendants and MDOC's prison officials acted with deliberate indifference when they refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly and engaged in conduct that clearly suggests(ed) a wanton disregard for Plaintiff's serious medical needs.

41.    Defendants' policies or customs regarding how they (1) provide medical care to inmates, (2) receive inmate requests for medical assistance, (3) diagnose inmate medical conditions, among others, shows that Defendants' policies or customs were maintained with an objective deliberate indifference towards prisoner safety.

42.    The delay of medical care to Plaintiff constituted an Eighth Amendment violation of Plaintiff's constitutional rights inasmuch as Defendants' manifested a deliberate indifference to Plaintiff's medical needs which ultimately caused Plaintiff's to lose his right arm.

43.    Shortly after Plaintiff's injury, Plaintiff made prison officials aware of his severe pain as a result of a fall at CMCF. Defendants, by and through its agent(s) and/or employee(s) knew of and disregarded Plaintiff's need for medical attention.

44.    In spite of the knowledge of Plaintiff's need for medical attention, agents and/or employees of Defendants refused to treat Plaintiff, ignored his complaints, and intentionally treated him incorrectly - conduct that indicates a wanton disregard for Plaintiff's need for adequate medical attention.

45.    Defendants, by and through their employees, did nothing to provide adequate medical attention to Plaintiff's broken arm until approximately **one (1) week** after receiving knowledge of Plaintiff's injury - and only after Plaintiff's condition deteriorated to the point of near death. These act(s) and/or omission(s), among others, illustrate a policy or custom whereby Defendants, by and through their employees and/or agents, do not intervene in ongoing inmate medical emergencies and are deliberately indifferent to inmate health and safety.

46.    Accordingly, at CMCF, prisoners in MDOC custody are forced to fend for themselves despite being stripped of virtually every means of self-protection and self-preservation and being foreclosed access to outside medical aid.

47.    Plaintiff was being held under conditions that posed a substantial risk of serious harm inasmuch as Defendants refused to treat Plaintiff, ignored his

complaints, intentionally treated him incorrectly and engaged in conduct that clearly suggests a wanton disregard for Plaintiff's serious medical needs. The act(s) and omission(s) by these defendants illustrate how Defendants acted with a subjective deliberate indifference relative to knowledge of Plaintiff's serious medical emergency.

48.     Again, Defendants' well-established customs, policies, act(s) and/or omission(s) show a clear and deliberate indifference to Plaintiff's health, Plaintiff's safety and Plaintiff's constitutional right to be free from cruel and unusual punishment.

49.     Because Plaintiff made Defendants, by and through Defendants' agents and/or employees, aware of his injured arm, Defendants through their employees and/or agents had subjective knowledge of the aforementioned substantial risks of serious harm. Essentially, Defendants individually and/or collectively knew or should have known that their inadequate customs, policies and/or procedures relative (1) providing medical care to inmates, (2) receiving and screening inmate requests for medical assistance, (3) diagnosing the severity of inmate medical emergencies, among others, have or would have caused the complained of harm.

50.     Further, the failure of Defendants to adequately train and supervise their employees, agents and medical personnel amounts to deliberate indifference to the rights of Plaintiff to be free from cruel and unusual punishment under the Fourth, Eighth and Fourteenth Amendment to the Constitution of the United States.

51.     In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff, as alleged herein, of certain constitutionally

protected rights including, but not limited to the right to be free from cruel and unusual punishment.

## VII.

## VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 (EIGHTH AMENDMENT VIOLATION - DELAY IN MEDICAL CARE)

52.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

53.    The employees and agents of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) violated Plaintiff's Eighth Amendment constitutional rights by denying and/or delaying medical care to him. The deliberate indifference to Plaintiff's broken arm caused a severe infection to develop resulting in Plaintiff eventually losing his arm.

54.    Specifically, after being made aware of Plaintiff's broken arm, Defendants refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly, misdiagnosed him and engaged in conduct that suggests a blatant wanton disregard for Plaintiff's serious medical needs.

55.    In spite of the knowledge of Plaintiff's severely injured arm, Defendants, by and through their agent(s) and/or employee(s), did nothing to provide adequate and immediate medical attention to Plaintiff. Defendants, by and through their agent(s) and/or employee(s), did not provide adequate medical care to Plaintiff until approximately one (1) week later and only after Plaintiff's physical, mental and emotional health had severely deteriorated. This condition of confinement (Plaintiff being subjected to a broken arm and being denied medical attention even after

Defendants, by and through their agent(s) and/or employee(s), were made aware of Plaintiff's condition) has no reasonable relationship to a legitimate governmental interest. Prisoners in these facilities controlled by Defendants are forced to fend for themselves despite being stripped of virtually every means of self-protection, self-preservation, and access to outside medical aid.

56.    Plaintiff was held under conditions that shocks the conscience and amount to cruel and unusual punishment. Defendants allowed Plaintiff's broken arm to fester and deteriorate which in essence, created an unconstitutional condition of confinement that has no reasonable relationship to a legitimate governmental interest besides inflicting cruel and unusual punishment to Plaintiff.

57.    Again, the existence of an identifiable intended condition or practice can be inferred from this case as well as other prior incidents. Likewise, Defendants' act(s) and/or omission(s) are sufficiently extended or pervasive to constitute an intended condition or practice of Defendants as a whole.

58.    On the date(s) in question, Defendants, by and through their agent(s) and/or employee(s), knew that Plaintiff's untreated broken arm presented a risk of serious harm because they were put on notice by Plaintiff. Nevertheless Defendants, by and through its agent(s) and/or employee(s) failed to investigate Plaintiff's medical condition and render medical attention to Plaintiff until days later and only after Plaintiff began going in and out of consciousness.

59.    These conditions whereby prisoners are (1) denied access to adequate medical treatment, (2) ignored in their complaints of medical emergencies, (3) intentionally misdiagnosed and incorrectly treated were not reasonably related to a

14

legitimate governmental objective. These conditions also violated Plaintiff's constitutional right to be provided with adequate medical care while he was in MDOC custody.

60.     In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff, as alleged herein, of certain constitutionally protected rights including, but not limited to the constitutional right to be free from cruel and unusual punishment and the right to timely, reasonable medical care.

## VIII.

## <u>VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983</u><br>(FAILURE TO TRAIN OR SUPERVISE)

61.     Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

62.     Defendants individually and/or collectively were deliberately indifferent when they implicitly or explicitly adopted and implemented careless and reckless training policies, customs, or practices, that were, among other things, inadequate in training prison officials to intervene in inmate medical emergencies and render medical aid to said inmates. Accordingly, these inadequate training policies, procedures, or practices were a moving force behind Plaintiff's constitutional violation and for these reasons Defendants are liable for said injuries.

63.     Specifically, Defendants' training program was wholly deficient in relation to providing adequate medical attention to inmates similarly situated to Plaintiff. Evidence of this assertion can be found in the act(s) and omission(s) of Defendants on the date(s) of Plaintiff's ordeal and at least one (1) prior medical emergency that left another inmate dead.

64.     On the date of Plaintiff's injury, the existence of an inadequate policy (or lack of policy altogether regarding inmate medical care) speaks for itself. Here, in light of the duties assigned to the numerous agents or employees of Defendants that were on duty at the time of the incident, the need for more or different training is obvious because (1) Defendants' agent(s) and/or employee(s) were  made aware of Plaintiff's serious medical need, (2) Defendants' agent(s) and/or employee(s) failed to timely respond to the plaintiff's medical emergency in spite of knowledge of his demise and (3) Defendants' agent(s) and/or employee(s) failed to identify Plaintiff as the inmate in need of adequate medical attention until almost one (1) week after being first noticed about Plaintiff's injury.

65.     Said inadequacies were the moving force behind the violation of Plaintiff's constitutional rights and Defendants and/or policymakers of Defendants can reasonably be said to have been deliberately indifferent to the needs of Plaintiff and similarly situated inmates.

66.     Based on Defendants' actions as alleged herein, there is a clear pattern of similar constitutional violations by these untrained prison officials and the inadequacies in Defendants' training program thus effectively put the policymakers on constructive notice that their training program causes other employee(s) and/or agent(s) of Defendants to violate inmates' rights.

67.     These prison officials and Defendants' agent(s) and/or employee(s) as a whole display such inadequate training that Defendants are constructively put on notice of the inadequate training to provide adequate medical attention and aid to inmates suffering from medical emergencies. Upon information and belief, even after

Defendants, by and through Defendants' agents and/or employees were made aware of Plaintiff's ongoing medical emergency, the agent(s) and/or employee(s) on duty did not have the training or resources to do anything *but* refuse medical treatment to Plaintiff, ignore his complaints, intentionally mistreat and/or incorrectly misdiagnose Plaintiff and engage in conduct suggestive of a wanton disregard for Plaintiff's serious medical needs - subjecting Plaintiff to cruel and unusual punishment.

### IX.

### VIOLATION OF CIVIL RIGHTS PURSUANT TO 42 U.S.C. § 1983 (FAILURE TO IMPLEMENT APPROPRIATE POLICIES, CUSTOMS AND PRACTICES)

68.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

69.    The employees and agents of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that included, among other things, purposefully understaffing facilities, the willful ignorance as to inmate complaints about facility conditions and the lack of medical care, the blatant failure to provide adequate inmate medical care, and the obvious disregard to inmate health and safety.

70.    The failure of all Defendants to adequately train and supervise their employees, agents and medical personnel amount to deliberate indifference to Plaintiff's right to be free from free from cruel and unusual punishment under the Fourth, Eighth and Fourteenth Amendments to the Constitution of the United States.

71.    In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff as alleged herein of certain constitutionally protected rights including, but not limited to: a) the right to be free from cruel and unusual punishment; and b) the right to adequate medical care.

## X.

## NEGLIGENCE AND NEGLIGENCE PER SE

72.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

73.    At the time and on the occasion in question, Defendants individually, jointly, and severally, possessed a duty or ordinary care to provide medical care to inmates at a prison facility in Mississippi.

74.    Defendants were imposed with non-delegable duties to inmates entrusted to their care to maintain their safety, health and well-being, both physical and psychological. Further, Defendants had duties related to the care, treatment, diagnoses, and provisions of medical care to Plaintiff, including but not limited to, to provide minimally competent healthcare treatment, diagnoses, and prognosis with regard to Plaintiff's health and physical well being.

75.    As a result of the act(s) and/or omission(s) of Defendants, Plaintiff sustained injuries, losses and damages. Defendants' act(s) and/or omission(s) proximately caused Plaintiff's injuries

76.    The duty owed by all Defendants to Plaintiff, to use reasonable and/or ordinary care in providing medical care to inmates at CMCF, included, but was not limited to, affirmative duties to protect and safeguard inmates' health, to make

reasonable efforts to keep inmates safe, to avoid actively harming inmates, to prevent injustice and abuse, to obey the laws of the State of Mississippi and the United States of America, to implement adequate and appropriate policies and procedures for the operation of the facility and to prevent abusive and illegal practices.

77.    The employees and agents of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) individually, jointly, and severally, were negligent in the following particulars, including but not limited to:

  i.    failing to prevent Plaintiff's injury;

  ii.    failing to prevent the worsening of Plaintiff's injury;

  iii.    understaffing medical personnel at CMCF;

  iv.    willfully ignoring inmate complaints about the lack of medical care at CMCF;

  v.    engaging in conduct to likely to cause psychological and emotional harm to Plaintiff;

  vi.    failing to provide adequate medical care to inmates suffering from medical emergencies; and

  vii.    other acts of negligence as will be more fully shown at trial.

78.    The above acts constitute common law negligence and negligence per se and were each a proximate cause of the occurrence in question. Further, the act(s) and/or omission(s) of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent

companies/corporations, and etc.), individually, jointly, and severally, resulted in Plaintiff's damages.

79.    At the time and on the occasion in question, John Does 1-25 are individuals, persons, corporate persons and/or business entities, the identities of which are currently unknown to Plaintiff. Upon information and belief these unknown individuals or entities, in addition to the named Defendants, were present at the prison facility where Plaintiff's injuries occurred, or were a contributing cause of the incidents and the resulting personal injuries to Plaintiff, or were engaged and/or had been engaged in certain operations at the scene of the incidents described herein, which otherwise caused and/or contributed to the incident.

80.    As a result of these aforesaid acts, Plaintiff suffered and continues to suffer severe losses, damages and irreparable injuries.

## XI.

## GROSS NEGLIGENCE

81.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

82.    The actions of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) individually, jointly, and severally, when viewed objectively was willful, wanton, reckless, malicious and involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff.

83.     Defendants had actual, subjective awareness of the risk, but nevertheless preceded with conscious indifference to the rights, safety or welfare of Plaintiff herein and as such constitutes gross negligence (malice) as the term is defined under Mississippi law. As a result, Plaintiff is entitled to the recovery of punitive damages.

## XII.

## **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

84.     Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

85.     The act(s) and/or omission(s) of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.), on the dates and times in question caused Plaintiff severe emotional distress through Defendants' negligent conduct.

86.     The negligent conduct perpetrated upon Plaintiff was awful, traumatic, and disturbing, which has caused Plaintiff to suffer serious emotional anguish.

87.     At all relevant times, Plaintiff was in the zone of danger as a result of the act(s) and/or omission(s) of Defendants.

88.     The act(s) and/or omission(s) of the aforementioned Defendants constitute a negligent infliction of emotional distress as defined under Mississippi law, and were each a proximate cause of the injuries of Plaintiff as well as the damages and losses sustained by Plaintiff.

## XIII.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

89.　Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

90.　The acts and conduct of all Defendants herein, by and through their employee-agents and described herein, were done willfully, maliciously, deliberately, and purposely with the intention to inflict emotional distress upon Plaintiff. Such acts were extreme, outrageous and done in reckless disregard of the probability of causing Plaintiff emotional distress. These acts did in fact result in severe and extreme emotional distress to Plaintiff.

91.　Defendants had a responsibility to oversee and control the conduct of their employees, specifically a duty to act upon complaints such as the ones detailed herein. Defendants breached their duty through their repeated failures to act upon such complaints.

92.　As a direct and proximate result of Defendants' acts alleged herein, Plaintiff was caused to incur severe and grievous mental and emotional suffering, fright, anguish, shock, fear, nervousness, and anxiety. Plaintiff continues to suffer the emotional effects of being subjected to the incidents detailed herein.

93.　The above act(s) and/or omission(s) constitute intentional infliction of emotional distress under Mississippi law and were each a proximate cause of the injuries and damages sustained by Plaintiff.

## XIV.

## RECKLESS DISREGARD FOR THE RIGHTS AND SAFETY OF PLAINTIFF

94.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as set forth herein in their entirety.

95.    The act(s) and/or omissions(s) of Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.), individually, jointly, and severally constitute a reckless disregard for the rights and safety of Plaintiff herein.

96.    Plaintiff was in custody as an inmate and was not engaged in criminal activity at the time of the injury.

97.    Further, these act(s) and/or omission(s) of Defendants occurred, in whole or in part, due to Defendants' reckless disregard for the rights and safety of Plaintiff and others.  Therefore these act(s) and/or omission(s) constitute a reckless disregard for the rights and safety of Plaintiff as defined under the Mississippi Tort Claims Act.

98.    The act(s) and/or omissions(s) of Defendants (including employees of the aforementioned in their official capacities as well as other unknown individuals, entities, businesses, parent companies, corporations, and etc.), individually, jointly, and severally, were a proximate cause as to the injuries and damages sustained by Plaintiff.

99.    As a result of Defendants' act(s) and/or omission(s), Plaintiff has incurred additional losses and damages.

100.    The plaintiff has been damaged and continues to be damaged as the direct, foreseeable and proximate result of the act(s) and/or omission(s) of these defendants.

## XV.

## BREACH OF A NON-DELEGABLE FIDUCIARY DUTY

101.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

102.    The failure and/or refusal of Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) to treat as well as prevent the deterioration of the injuries and damages to Plaintiff, at a time when Plaintiff was stripped of virtually every means of self-protection, self-preservation and was foreclosed access to outside medical aid, constituted a breach of a non-delegable and/or fiduciary duty owed to Plaintiff.

103.    Pursuant to Miss. Code Ann. § 11-1-65, inasmuch as the conduct of Defendants constitutes willful, wanton, egregious and reckless conduct, an award of punitive damages is appropriate and necessary under these facts.

## XVI.

## RESPONDEAT SUPERIOR

104.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

105.    John Does 1-25 (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) were in the course and scope of their employment with Defendants, at all relevant times immediately subsequent and preceding the incidents in question.

106.    Therefore, Defendants are liable for the negligence of their employee(s) John Does 1-25 (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.).

## XVII.

## NEGLIGENT HIRING, RETENTION, SUPERVISION, TRAINING AND/OR CONTROL

107.    Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

108.    At the time and on the occasion in question, Defendants John Does 1-15 (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.) were in the course and scope of their employment with Defendants.

109.    Further, Defendants (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.), were negligent in hiring, retaining, supervising and/or controlling their employees, servants, and/or agents, including but not limited to Defendants John Does 1-25 (including employees of the aforementioned facilities in their official capacities as well as other unknown entities, businesses, parent companies/corporations, and etc.).

110.    Defendants are (and at the time of Plaintiff's injuries and damages) were tasked with the non-delegable duty and responsibility to formulate, oversee and implement official policies, procedures, practices and customs that were to be carried out by the employee(s) and/or medical personnel of Defendants.

111.    As a direct and proximate consequence of Defendants' failure to properly develop, implement and otherwise devise a policy of adequate employee and/or security training and/or supervision for its employees and/or medical personnel, Plaintiff was deprived of certain constitutional rights, privileges and immunities which, if properly trained and supervised, every employee and/or security personnel within the employ of Defendants would have known of the illegality of Defendants' conduct on the date in question and Plaintiff's injuries, and the corresponding deprivation of civil rights, privileges and immunities would not have happened.

## XVIII.

### *RES IPSA LOQUITUR* LIABILITY

112.    Plaintiff re-alleges and incorporate herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

113.    The act(s) and/or omission(s) of Defendants, under the present set of circumstances, provide an inference of negligence of the part of these Defendants, either individually or collectively, so as to establish a prima facie case. The mere occurrence of this incident and the resulting injury, taken with the surrounding circumstances, should allow for an inference of negligence against these Defendants.

114.    At all pertinent times, Defendants were in sole and complete control of the agents, employees and/or facility which became the instrumentality causing the resulting injuries of Plaintiff. Defendants negligently, if not intentionally, failed to exercise the power necessary to avert such injuries by insuring that the proper operation was maintained and adequate measures were in place to avoid the resulting injuries.

115. Defendants were presented with an available opportunity to avoid the resulting incidents. Defendants failed to exercise such control over their agents, employees and/or inmates so as to prevent the injuries of Plaintiff.

116. The duty of care owed to Plaintiff was therefore breached by Defendants.

117. The nature of the events described herein is of the type that does not ordinarily occur in the absence of negligence.

118. The above acts constitute negligence and were each a proximate cause of the occurrence in question. Further, the act(s) and/or omission(s) of these Defendants proximately caused the damages and injuries sustained by Plaintiffs.

## XIX.

## <u>DAMAGES</u>

119. As a direct and proximate result of the conduct of all Defendants, Plaintiff has suffered and will continue to suffer damages in an amount in excess of the minimum jurisdictional limits of the Court as set forth herein. Plaintiff's injuries and the harm that he has sustained are directly attributable to the occurrence made the basis of this lawsuit.

120. Plaintiff requests an award of all kinds of economic, non-economic, actual, compensatory, incidental and consequential damages available to him under the law.

121. Plaintiff has suffered out-of-pocket expenses which include attorneys' fees, costs of court and other expenses. Accordingly, Plaintiff seeks all general, special, incidental and consequential damages as shall be proven at the time of trial, including exemplary, enhanced and trebled damages. Plaintiff seeks pre-judgment interest at a

rate commensurate with the actual rate of interest in the marketplace or, alternatively, a statutory rate of interest because of the delay in receiving the damages and also to avoid unjust enrichment to Defendants. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law.

122.    The amount of total damages suffered by Plaintiff is significant and continuing in nature.

## XX.

## ATTORNEY'S FEES

123.    Pursuant to 42 U.S.C. § 1983, Plaintiff requests and is entitled to an award of attorney's fees in an amount to be determined by this Honorable Court.

## XXI.

## RIGHT TO AMEND PURSUANT TO FED. R. CIV. P. 15

124.    Pursuant to Rule 15 of the Federal Rules of Civil Procedure, Plaintiff reserves the right to name additional defendants should later facts establish that others are liable herein.

## XXII.

## JURY TRIAL DEMANDED

125.    Plaintiff demands a jury trial.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that upon final trial hereof,  he be entitled to take, have and recover, of and from said Defendants the above damages, including economic, non-economic, actual, compensatory, punitive, pre-judgment interest, post-judgment interest, attorneys' fees, attorneys' expenses, costs of

Court, and for such other and further relief to which he may show himself to be justly entitled.

Respectfully submitted, this the ___20___ day of ___June___, 2025.


CHRISTOPHER BOOSE, Plaintiff

By: _Warren L Martin_____
Warren L. Martin, Jr.

**Of Counsel:**
Warren L. Martin, Jr., MSB # 101528
Robert E. Thompson, II, MSB # 105731
**WARREN L. MARTIN, JR., PA**
351 Edgewood Terrace Dr.
Jackson, MS 39206
Post Office Box 1870
Jackson, Mississippi 39215
Phone: (769) 257-6052
Fax: (769) 257-6596
Email: attywarrenmartin@gmail.com

## CERTIFICATE OF CONSULTATION

The undersigned counsel does hereby certify that prior to this date, this attorney has reviewed the facts of this case and has consulted with at least one (1) expert qualified pursuant to the Rules of Civil Procedure and the Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who this attorney reasonably believes is knowledgeable in the relevant issues involved in the particular action, and that this attorney has concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of such action. I, WARREN L. MARTIN, JR. make this certificate in compliance with Mississippi Code Annotated Section and all other applicable statutes.

This the ____20____ day of _____June_____, 202_5_ .

_Warren L. Martin_

WARREN L. MARTIN, JR.

*Attorney for the Plaintiffs*